IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| SOPHIE ROGERS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 1:19-cv-1149-RDA/IDD |
| | ) | |
| v. | ) | |
| | ) | |
| VIRGINIA STATE REGISTRAR, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF**
**<u>DEFENDANTS' MOTION TO DISMISS THE COMPLAINT</u>**

Toby J. Heytens
Solicitor General
Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-7240 – Telephone
(804) 371-0200 – Facsimile
solicitorgeneral@oag.state.va.us
*Attorney for Defendant Virginia State Registrar*

Richard C. Sullivan, Jr., VSB No. 27907
Bean, Kinney & Korman, P.C.
2311 Wilson Boulevard, Suite 500
Arlington, Virginia 22201
Telephone: (703) 525 – 4000
Facsimile: (703) 525 – 2207
rsullivan@beankinney.com
*Attorney for Defendants Clerks*

Christopher Falcon
1425 N. Courthouse Road, Suite 6700
Arlington, VA 22201
(703) 228-7010 – Telephone
(703) 228-7079 – Facsimile
cfalcon@arlingtonva.us
*Attorney for Defendant Clerk, Arlington Circuit Court*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

STATEMENT ............................................................................................................................ 1

    A.  Statutory Background ............................................................................................... 1

    B.  Factual and Procedural Background ......................................................................... 2

LEGAL STANDARD ................................................................................................................ 7

ARGUMENT ............................................................................................................................. 8

  I.    There is no case or controversy over plaintiffs' mandatory-condition theory .................. 8

    A.  There is no "real, earnest, and vital" controversy about whether plaintiffs must self-label their race as a condition of getting married ................................................. 9

    B.  Any previously live controversy on the mandatory-condition theory is now moot .................................................................................................................... 10

    C.  Even if plaintiffs' mandatory-condition claims remained justiciable, their request for equitable relief would fail as a matter of law ......................................... 13

  II.   Plaintiffs' belated request for relief based on the mere-inquiry theory is procedurally defective and fails as a matter of law ............................................................. 14

    A.  The complaint does not properly plead a mere-inquiry theory ................................. 14

    B.  Plaintiffs' mere-inquiry theory fails as a matter of law ........................................... 16

CERTIFICATE OF SERVICE ................................................................................................. 18

STATUTORY ADDENDUM .............................................................................................. A-1

i

# TABLE OF AUTHORITIES

Page

**Cases**

*Barclay White Skanska, Inc. v. Battelle Mem. Inst.*,
  262 Fed. Appx. 556 (4th Cir. 2008) ........................................................................ 15

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) .................................................................................... 13, 14

*City of Richmond v. Drewry-Hughes Co.*,
  94 S.E. 989 (Va. 1918) ................................................................................ 15

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ...................................................................................... 13

*Commonwealth v. Doe*,
  278 Va. 223 (2009) ......................................................................................... 4

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ...................................................................................... 11

*Grayson O Co. v. Agadir Int'l LLC*,
  856 F.3d 307 (4th Cir. 2017) ........................................................................ 15

*INS v. Chadha*,
  462 U.S. 919 (1983) ........................................................................................ 9

*Jennings v. Rodriguez*,
  138 S. Ct. 830 (2018) .................................................................................... 16

*Porter v. Clarke*,
  852 F.3d 358 (4th Cir. 2017) .................................................................... 12, 13

*Rumsfeld v. Forum for Academic and Institutional Rights*,
  547 U.S. 47 (2006) ........................................................................................ 16

*Telco Commc'ns, Inc. v. Carbaugh*,
  885 F.2d 1225 (4th Cir. 1989) ................................................................... 12, 13

*United States v. W.T. Grant Co.*,
  345 U.S. 629 (1953) ...................................................................................... 13

*Valley Forge Christian College v. Americans United for the Separation of Church & State*,
  454 U.S. 464 (1982) ................................................................................... 9, 13

*Wall v. Wade*,
  741 F.3d 492 (4th Cir. 2014) ........................................................................ 12

*Will v. Michigan Dep't of State Police*,
  491 U.S. 58 (1989) ........................................................................................ 11

*Williams v. Ozmint*,
  716 F.3d 801 (4th Cir. 2013) ........................................................................ 11

*Windsor v. United States*,
  570 U.S. 744 (2013) ........................................................................................... 9, 10

*Zablocki v. Redhail*,
  434 U.S. 374 (1978) ........................................................................................... 16

**Constitutional Provisions**

Va. Const. Art. V, § 1 ........................................................................................... 13

Va. Const. Art. V, § 15 ......................................................................................... 13

**Statutes**

42 U.S.C § 1983 .................................................................................................. 11

Va. Code Ann. § 32.1–267.............................................................................. passim

Va. Code Ann. § 32.1–267(A) ...................................................................... 2, 4, 11

Va. Code Ann. § 32.1–267(B) ............................................................................... 2

Va. Code Ann. § 32.1–267(C) ............................................................................... 2

Va. Code Ann. § 32.1–267(D) ............................................................................... 2

Va. Code Ann. § 32.1–267(E) ............................................................................... 2

Va. Code Ann. § 46.2-342 ..................................................................................... 2

**Administrative Materials**

12VAC-550-13 ...................................................................................................... 5

## INTRODUCTION

This case involves a constitutional challenge to Virginia Code Ann. § 32.1–267. The theory set forth in the complaint is that Section 32.1–267 violates the plaintiffs' constitutional rights by "requiring" or "compel[ing]" them, "as a condition of exercising their fundamental right to marry, to label themselves" by reference to race (the mandatory-condition theory). Complaint ¶¶ 1, 74–77 (ECF No. 1). In their more recent filings, plaintiffs have shifted gears, suggesting that the statute is also unconstitutional to the extent it calls for an inquiry about race, regardless of whether applicants are required to answer and regardless of whether their entitlement to a marriage license turns on their response (the mere-inquiry theory). See, *e.g.*, Mem. in Supp. of Pls.' Mot. for S.J. 6 n.6 (ECF No. 18) (Pls.' S.J. Br.). But the mandatory-condition theory implicates no live conflict between the parties, and the mere-inquiry theory is not properly presented and fails as a matter of law. Accordingly, this Court should dismiss the complaint.[1]

## STATEMENT

### A.    Statutory Background

Virginia Code Ann. § 32.1–267 sets forth several directives.[2] Part A—the portion plaintiffs identify as compulsory, see Complaint ¶ 1—is directed to no one in particular. That provision states, in its entirety: "For each marriage performed in the Commonwealth, a record

---

[1] Defendants share plaintiffs' goal of "conclud[ing] this litigation as promptly and efficiently as possible" and agree that "no useful purpose" would be "served by dragging this case through discovery, with the costs and inconveniences attendant thereon." Pls.' S.J. Br. 1 & n.1. Accordingly, defendants do not oppose plaintiffs' Motion for Consolidation of Hearing on Motion for Preliminary Injunction with Disposition of the Merits (ECF No. 20). Defendants believe that the case can properly be concluded (or at least meaningfully narrowed) at the hearing scheduled for October 4, 2019.

[2] The complete text of Section 32.1–267 is reproduced as an addendum at the end of this memorandum.

1

showing personal data, including but not limited to age and race of the married parties, the marriage license, and the certifying statement of the facts of marriage shall be filed with the State Registrar as provided in this section." Va. Code Ann. § 32.1–267(A).

The remainder of the statute assigns specific duties to: (1) the State Registrar; (2) marriage officiants; (3) the couple seeking a marriage license; and (4) officers issuing marriage licenses (including clerks). As relevant here, the statute directs the State Registrar to "furnish forms for the marriage license, marriage certificate, and application for marriage license used in the Commonwealth," which must be configured to protect the applicants' social security or control numbers from public disclosure. Va. Code Ann. § 32.1–267(E). As to officiants, the statute provides: "Every person who officiates at a marriage ceremony shall certify to the facts of marriage and file the record in duplicate with the officer who issued the marriage license within five days after the ceremony." § 32.1–267(C).  For the couple seeking the marriage license, the statute directs them to "include their social security numbers or other control numbers issued by the Department of Motor Vehicles pursuant to § 46.2-342 and affix their signatures to the application for such license." § 32.1–267(B). Finally, the officer issuing the marriage license "shall prepare the record based on the information obtained under oath or by affidavit from the parties to be married" and "shall on or before the tenth day of each calendar month forward to the State Registrar a record of each marriage filed with him during the preceding calendar month." § 32.1–267(B), (D).

### B.  Factual and Procedural Background

1.   On September 5, 2019, plaintiffs filed a complaint alleging that Section 32.1–267 violates their rights under the First, Fourth, Fifth, Ninth, Thirteenth, and Fourteenth Amendments. See Complaint ¶¶ 74–77. From its first paragraph to its last, the complaint grounds the alleged constitutional violations in the mandatory-condition theory, focusing on the statute's

asserted "requir[ement]" that they "label themselves according to race" as a condition of getting married. Complaint ¶ 1.[3] Two of the plaintiffs sought emergency relief, asking this Court to "enjoin[] the defendants from enforcing [Section 32.1–267] as to them, thereby permitting them to obtain a timely marriage license without having to label themselves by race." Mem. in Support of Mot. for Preliminary Injunction at 17 (ECF No. 7) (Pls.' PI Br.).

2.      Plaintiffs do not appear to have raised their concerns with state officials before filing this lawsuit, and their complaint prompted questions about the obligations imposed by Section 32.1–267. Having reviewed the statute, Virginia's Attorney General concluded "that Code § 32.1–267 does not require a clerk to refuse to issue a marriage license when the applicant declines to identify his or her race, and that clerks should issue a license regardless of an applicant's answer or non-answer to that inquiry." Exhibit B to Ferguson Decl., Memorandum to

---

[3] See also Complaint ¶¶ 4–7 (stating that plaintiffs Ramkishun, Sarfo, Spencer, and Poole "would like to [get married] in Virginia . . . but not if [they] must label [themselves] with a race in order to get a marriage license"); ¶ 12 (referencing "Virginia's requirement that 'race' be declared by a person seeking to get married"); ¶ 74 (asserting that by "*compel[ing]* plaintiffs, as a condition of exercising their fundamental right to marry, to label themselves against their will . . . defendants deprive them, without substantive due process of law, of their liberty") (emphasis added); *id.* ¶ 75 (by "*compel[ing]* plaintiffs, in order to exercise their fundamental right to marry, affirmatively to label themselves against their will according to racial categories . . . [d]efendants . . . violate plaintiffs' right to free speech") (emphasis added); ¶ 76 (by "*compel[ing]* plaintiffs, in order to exercise their fundamental right to marry, to label and thereby characterize themselves on a public record, against their will, . . . Defendants . . . violate plaintiffs' right to personal privacy protected by the First, Fourth, Fifth, Ninth, and Fourteenth Amendments of the United States Constitution and their penumbras") (emphasis added); ¶ 77 (by "*compel[ing]* plaintiffs . . . , in order to exercise their fundamental right to marry, to label themselves according to malignant racial categories that reflect a history of racist doctrines and policies . . . [d]efendants . . . violate [plaintiffs'] right to freedom from the badges and incidents of slavery guaranteed by the Thirteenth Amendment") (emphasis added); p. 30 (requesting a "[d]ecl[ation] that Va. Code Ann. § 32.1–267(A) [is] unconstitutional *to the extent that it requires persons seeking to obtain a license to marry to state their 'race'*" and an injunction barring "defendants and all others acting in concert with them from enforcing the provisions of Va. Code Ann. § 32.1–267(A) *requiring* a statement of the applicant's 'race'") (emphases added).

3

Janet Rainey, Director and State Registrar, Division of Vital Records, from Mark R. Herring,

Attorney General, *re: Virginia Code Ann. § 32.1-267* at 1 (Attorney General Memorandum).

Beginning with the text of Section 32.1–267, the Attorney General noted "[s]everal

aspects [that] bear emphasis." Attorney General Memorandum at 2. "First, by directing that 'a

record showing personal data, including . . . race . . . *shall* be filed with the State Registrar,' . . .

the statute plainly requires a question about race be asked." Attorney General Memorandum at 1

(quoting Va. Code Ann. § 32.1–267(A) (emphasis added)). "But," the Attorney General

continued, "no provision of the statute expressly requires the couple to identify their race or says

what happens if they decline to do so." *Id.* at 2. Moreover, "the only part of the statute that

directly imposes obligations on the couple—Part B—says nothing about race, and the provision

directing the clerk to 'prepare the record' makes clear that the record is based only on the

information provided by the couple." *Id.* The Attorney General also noted that "[t]he statutory

text imposes no freestanding obligation on the clerk to ascertain the applicants' race, nor does it

direct the clerk to require entry of race as a prerequisite to accepting the applicants' form." *Id.*

"To the contrary, the statute is *entirely silent* as to how the clerk is to deal with an application

that omits the requested information." *Id.* (emphasis added).

"'In resolving this issue of statutory construction,'" the Attorney General stated that he

was "guided by the principle that statutes should be construed 'to avoid any conflict with the

Constitution.'" Attorney General Memorandum at 2 (quoting *Commonwealth v. Doe*, 278 Va.

223, 229 (2009)). The Attorney General noted "[a]ny statute *requiring* a governmental official to

deny a marriage license to an applicant who declines to provide information about his or her race

would raise serious constitutional questions," both because "the right to marry is fundamental

under the Due Process Clause" and because "government action dividing us by race is inherently

4

suspect" under equal protection principles. *Id.* at 2–3 (brackets, internal quotation marks, and citations omitted). Because of "the statute['s] . . . silen[ce] as to how the clerk is to deal with an application that omits the requested information," *id.* at 2, the Attorney General concluded that "there is an available interpretation of Code § 32.1–267" "that would permit a clerk to accept a marriage license even though one or both of the applicants declines to identify his or her race." *Id.* at 3. And, consistent with the principle of constitutional avoidance, the Attorney General stated that he "adopted that interpretation." *Id.*[4]

3.      On Friday, September 13, 2019—eight days after the complaint was filed—Janet Rainey, the current Virginia State Registrar and Director of the Division of Vital Records, distributed to all circuit court clerks a new form specifically permitting marriage-license applicants to decline to identify or disclose a race. See Ex. C to Ferguson Decl. In the accompanying email, Director Rainey noted that she had "asked the Office of the Attorney General for clarification regarding the requirements of Virginia Code § 32.1–267" and that, based on that advice, she had "revised the marriage certificate form so it is clear that applicants for a marriage license may decline answering the question regarding their race." Ex. A to Ferguson Decl. Director Rainey asked all clerks to "[p]lease start using the attached fillable PDF marriage certificate form immediately," and also attached a copy of the memorandum she had received from the Attorney General. *Id.*

Having received Director Rainey's email, circuit court clerks Paul F. Ferguson and Michelle G. Trout (the other defendants in this case) immediately took steps to use the new form

---

[4] The Attorney General found that "[f]or the same reasons discussed . . . in connection with Code § 32.1–267, Virginia Administrative Code 12VAC-550-13 'Marriage Return and Certificate Items' is likewise interpreted as permitting a couple to decline to provide an answer about race and permitting an officer issuing a marriage license to accept a marriage license from a couple who declines to answer a question about race." Attorney General Memorandum at 1.

Director Rainey provided. See Ferguson Decl. ¶ 10; Trout Decl. ¶ 10. Since September 13, 2019, more than 130 marriage licenses have been issued in jurisdictions where Mr. Ferguson and Ms. Trout are the clerks. See Ferguson Decl. ¶ 11; Trout Decl. ¶ 11. None of those applicants has been required "to label [themselves] with a race in order to get a marriage license." Complaint ¶¶ 4–7. See Ferguson Decl. ¶ 11; Trout Decl. ¶ 11.

      4.      On Monday, September 16—the first business day after Director Rainey issued the revised form—plaintiffs moved for summary judgment and to consolidate the then-pending hearing on their request for a preliminary injunction with the court's final disposition of the case. See Pls.' Mot. for S.J. (ECF No. 17); Mot. for Consolidation of Hearing on Mot. for Prelim. Inj. with Disposition of the Merits and Waiver of Hr'g on Mot. (ECF No. 20). In their accompanying briefs, plaintiffs assert "that the Virginia attorney general [had] publicly effectively conceded the case." Mem. in Supp. of Pls.' Mot. for Consolidation of Hearing on Mot. for Prelim. Inj. With Disposition of Merits 1 (ECF No. 21) (Pls.' Consolidation Br.).  Plaintiffs also briefly suggest— for the first time—the mere-inquiry theory, asserting that "[i]t is insufficient for the racial identification inquiry to remain but be labeled 'optional'" and analogizing that outcome to "re-institut[ing] separate water fountains" based on race "but mark[ing] the designation as 'optional.'" Pls.' Consolidation Br 6 n.6; accord Pls.' S.J. Br. 6 n.6 (same). Plaintiffs did not, however, attempt to amend their complaint, nor did they withdraw their motion for a preliminary injunction or attempt to convert that request into one for a permanent injunction. Instead, they simply ask this Court to "enter a permanent injunction . . . barring defendants and their privies from requiring racial identification as a condition of receiving a license to marry and . . . requiring them to prepare and use marriage license application forms that do not request one's race." Pls.' Consolidation Br. 6.

## LEGAL STANDARD

Because this motion is brought under both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), two different standards apply.

Defendants' non-justiciability arguments are reviewed under Rule 12(b)(1). See *De la Fuente v. Lamone*, 2017 WL 2439143, at *4 (D. Md. June 5, 2017) ("Three inter-related judicial doctrines—standing, mootness, and ripeness—ensure that federal courts assert jurisdiction only over 'Cases' and 'Controversies. Accordingly, defendants' argument that the Complaint is moot is properly considered under Rule 12(b)(1).") (internal citations and quotation marks omitted). "Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction." *Id.* (citing *Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015)). "When a defendant asserts that the plaintiff has failed to allege facts sufficient to establish subject matter jurisdiction, the allegations in the complaint are assumed to be true . . . and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Nat'l Fed. of the Blind v. U.S. Dep't of Educ.*, 2019 WL 3945979, at *3 (D. Md. Aug. 21, 2019) (quotation marks omitted).  In contrast, "[w]hen"—as here—"a defendant asserts that facts outside of the complaint deprive the court of jurisdiction, the Court 'may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Id.* (quoting *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)).[5] The court should grant a Rule 12(b)(1) motion based on a factual challenge to subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving

---

[5] For that reason, the Court may properly consider the declarations from Circuit Clerks Paul F. Ferguson and Michelle G. Trout and the accompanying exhibits in considering the motion to dismiss under Rule 12(b)(1).

party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co., Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999) (citation and quotation marks omitted).

Under Rule 12(b)(6), a complaint should be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The Court must 'assume the facts alleged in the complaint are true and draw all reasonable factual inferences in [the plaintiff's] favor", but only to the extent those allegations pertain to facts rather than legal conclusions. *Graham v. City of Manassas School Bd.*, 390 F. Supp. 3d 702, 708–09 (E.D. Va. 2019) (quoting *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002)).

## ARGUMENT

### I. There is no case or controversy over plaintiffs' mandatory-condition theory

All parties to this case agree on the fundamental issue: no one should be "compel[led] . . . as a condition of exercising the[] fundamental right to marry, to label themselves against their will according to racial categories." Complaint ¶ 74. The parties likewise agree that there is no need for a protracted struggle—or a struggle of any kind—over this question. In the wake of Director Rainey's provision of a new marriage form (based on the Attorney General's guidance about the proper interpretation of Virginia Code Ann. § 32.1–267), plaintiffs (and all others) may *currently* obtain marriage licenses without being "require[d] . . . to label themselves." Complaint ¶ 1. Because of the parties' agreement—and because plaintiffs could not obtain from the Court the ability to do anything they cannot do now—this Court lacks jurisdiction over any claims

8

based on the mandatory-condition theory. At a minimum, plaintiffs are not entitled to equitable relief on those claims.

A.     There is no "real, earnest, and vital" controversy about whether plaintiffs must self-label their race as a condition of getting married

"The judicial power of the United States defined by Art. III is not an unconditioned authority to determine the constitutionality of legislative or executive acts." *Valley Forge Christian College v. Americans United for the Separation of Church & State*, 454 U.S. 464, 471 (1982). Rather, as the Supreme Court has explained, "[t]he power to declare the rights of individuals and to measure the authority of governments . . . is legitimate only in the last resort, and as a necessity in the determination of real, earnest and vital controversy." *Id.* (quotation marks omitted). "Otherwise, the power is not judicial . . . in the sense in which judicial power is granted by the Constitution to the courts of the United States." *Id.* (quotation marks omitted).

These principles explain both why the Supreme Court concluded in *Windsor v. United States*, 570 U.S. 744 (2013), that a federal district court had jurisdiction over that case, and why the analysis comes out the other way here. *Windsor* involved the constitutionality of the federal Defense of Marriage Act, and the "complication" was that the defendant (the federal government) agreed with the plaintiffs' view that the statute was unconstitutional. *Id.* at 756. "Even though the Executive's current position was announced before the District Court entered its judgment," the Court concluded that "the Government's agreement with Windsor's position would not have deprived the District Court of jurisdiction to entertain and resolve [Windsor's tax] refund suit" because the Government had refused to give Windsor her refund unless ordered to do so by a court. *Id.* "The Government's position," the Court explained, "agreeing with Windsor's legal contention but refusing to give it effect—meant that there was a justiciable controversy between the parties." *Id.*; accord *INS v. Chadha*, 462 U.S. 919, 939–40 (1983) ("[I]f

we rule for Chadha, he will not be deported; if we uphold [the statute], the INS will execute its order and deport him."). But "[i]t would be a different case," the Court emphasized, "if the Executive had taken the further step of paying Windsor the refund to which she was entitled." *Windsor*, 570 U.S. at 758.

This is the "different case" hypothesized in *Windsor*. Similar to *Windsor*, all parties to this case agree that the plaintiffs have a legal entitlement to apply for and obtain marriage licenses without having to label themselves by race. But unlike in *Windsor*, the defendants here have "taken the further step," 570 U.S. at 758—defendant Rainey by promulgating a new form specifically stating that applicants are not required to provide a race and making clear that she will accept forms that do not provide one, see Ex. A to Ferguson Decl., and the clerk defendants by adopting the new form and stating under oath that they will accept applications that do not include information about race, see Ferguson Decl. ¶¶ 10, 12; Trout Decl. ¶¶ 10, 12. To the extent plaintiffs' challenge a law *requiring* them to identify a race as a condition of getting married, it is clear in this case that "the Government [does not] intend[] to enforce the challenged law against [the plaintiffs]." *Windsor*, 570 U.S. at 759 (internal quotation marks and citation omitted). For that reason, this Court lacks jurisdiction.

**B.    Any previously live controversy on the mandatory-condition theory is now moot**

1.    Although the complaint does not so state, we are aware that plaintiffs Rogers and Churchill previously attempted to obtain a marriage license without providing information about their race and were unable to do so. See Trout Decl. ¶ 4.[6]  For that reason, we do not dispute that plaintiffs Rogers and Churchill had standing to pursue this lawsuit when the complaint was filed.

---

[6] Defendants have no record of any other plaintiff attempting to obtain a license, which is consistent with statements in the complaint making clear that they have no immediate plans to marry. See Ferguson Decl. ¶¶ 3, 4; Trout Decl. ¶¶ 3, 4; Complaint ¶¶ 3–7.

But "it is not enough that a dispute was very much alive when the suit was filed," because "the parties must continue to have a particularized, concrete stake in the outcome of the case through all stages of litigation." *Williams v. Ozmint*, 716 F.3d 801, 808–09 (4th Cir. 2013) (brackets, internal quotation marks, and citation omitted). For that reason, *"*[a] change in factual circumstances can moot a case . . . when the plaintiff receives the relief sought in his or her claim, or when an event occurs that makes it impossible for the court to grant any effectual relief to the plaintiff." *Id.* at 809 (citations omitted).

As just described, plaintiffs have already "receive[d] the relief sought in [their] claim"— *i.e.*, that they should be free to marry without being required to identify a race—and thus no longer have a "particularized, concrete stake in the outcome of" that question. *Williams*, 716 F.3d at 808. Critically, plaintiffs request only prospective relief, not damages. See Complaint at 30.[7] And because plaintiffs are not currently subject to any requirement that they identify a race as a condition of getting married, an order of this Court "prohibiting defendants from denying them a marriage license if they fail to label themselves by race" or barring defendants "from enforcing the provisions of Va. Code. § 32.1–267(A) *requiring* a statement of the applicant's 'race,'" Complaint at 30 (emphasis added), "would not redress in any way the injury . . . originally asserted," *Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir. 2007).

2.    We recognize that "[a] defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000). But the Fourth Circuit has observed that

___

[7] Because plaintiffs sued defendants "in their official capacity alone," Pls.' PI Br. 2 n.1; accord Complaint ¶ 1, damages would have been unavailable even had plaintiffs requested them. See *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under [42 U.S.C] § 1983" and thus neither are subject to liability for damages).

"jurisdiction . . . may abate," *Telco Commc'ns, Inc. v. Carbaugh*, 885 F.2d 1225, 1231 (4th Cir. 1989), if it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur," *Porter v. Clarke*, 852 F.3d 358, 364 (4th Cir. 2017) (internal quotation marks omitted). Specifically, the Fourth Circuit has recently emphasized that "a governmental entity's change of policy renders a challenge moot when the governmental entity 'has not asserted its right to enforce [the challenged policy] at any future time.'" *Id.* (quoting *Telco Commc'ns*, 885 F.2d at 1231)). By contrast, the Fourth Circuit has been unwilling to find mootness "when the defendant expressly states that, notwithstanding its abandonment of a challenged policy, it could return to the contested policy in the future, or when the defendant's reluctant decision to change a policy reflects a desire to return to the old ways." *Porter*, 852 F.3d at 365 (quotation marks and citations omitted); see *Wall v. Wade*, 741 F.3d 492, 498 (4th Cir. 2014) (case not moot where defendants offered no more than "bald assertions" that they would not resume the challenged policy).

This case falls in the former category. As explained earlier, it does not appear that the Commonwealth's highest legal officer had previously considered whether the statute in question is properly construed to require denial of marriage licenses to applicants who refuse to identify a race. Having now considered the question, the Attorney General has concluded that the statute imposes no such requirement and advised Director Rainey accordingly. Based on that advice, Director Rainey has revised the relevant state form to make clear that applicants may decline to identify a race and distributed the revised form (and the Attorney General's advice) to all clerks in the Commonwealth. Having received those materials, the clerk defendants have adopted the new form and have declared, under oath, that they will adhere to the Attorney General's advice going forward. See Ferguson Decl. ¶ 12; Trout Decl. ¶ 12. There is no basis for concluding that

these changes were "reluctant" or "reflect[] 'a desire to return to the old ways.'" *Porter*, 852 F.3d

at 365. For that reason, any challenge based a mandatory-condition theory is now moot.[8]

### C.   Even if plaintiffs' mandatory-condition claims remained justiciable, their request for equitable relief would fail as a matter of law

"The purpose of an injunction is to prevent future violations." *United States v. W.T.*

*Grant Co.*, 345 U.S. 629, 633 (1953). "[P]ast exposure to illegal conduct does not in itself show

a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing,

present adverse acts." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Even where a

plaintiff's past harm continues to support Article III standing to seek an injunction, that

"equitable remedy is unavailable absent a showing of irreparable injury, a requirement that

cannot be met where there is no showing of any real or immediate threat that the plaintiff will be

wronged again." *Id.* at 111. The Supreme Court has specifically "declin[ed] . . . to slight the

preconditions for equitable relief" in constitutional cases, emphasizing that "the need for a proper

balance between state and federal authority counsels restraint in the issuance of injunctions

against state officers engaged in the administration of the [S]tates' . . . laws[.]" *Id.* at 112; see

also *Telco Commc'ns*, 885 F.2d at 1231 (refusing to grant an injunction against state officials and

---

[8] The theoretical possibility that a future Attorney General could (re)interpret the statute as imposing a mandatory obligation does not save this case from mootness. Attorney General Herring was elected to a four-year term that does not end until January 2022. See Va. Const. Art. V, §§ 1, 15. According to the complaint, one of the three plaintiff couples plans to marry in October 2019 and will thus necessarily procure their license during Attorney General Herring's term. Complaint ¶¶ 2–3. Although the other two couples do not have immediate plans to marry, it is reasonable to expect that they will do so in the next 27 months. Indeed, if plaintiffs do not intend to marry in that more-than-two-year timeframe, their current challenge would be non-justiciable for a second reason: failure to satisfy the requirement of an "actual or imminent" injury. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). And, of course, once married, the current plaintiffs would lack standing to challenge the statute's application to others. See *Valley Forge Christian College*, 454 U.S. at 474 ("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").

"declin[ing] to indulge any presumption with respect to their conduct other than one of good faith" where "State officials have shown no inclination to enforce" a statute of questionable constitutionality).

Plaintiffs cannot demonstrate an entitlement to injunctive relief under these standards. As explained above, plaintiffs have already received meaningful relief: State officials have disavowed any intent to interpret Section 32.1–267 as requiring marriage-license applicants to disclose their race as a condition of getting married and have backed up that disavowal by altering the official state forms. Because plaintiffs cannot establish "any real or immediate threat that [they] will be wronged again," *Lyons*, 461 U.S. at 111, their request for injunctive relief on a mandatory-condition theory fails as a matter of law.

## II.   Plaintiffs' belated request for relief based on the mere-inquiry theory is procedurally defective and fails as a matter of law

In their most recent filings, plaintiffs make a cursory attempt to challenge Section 32.1–267 on a mere-inquiry theory, suggesting that even asking marriage-license applicants to voluntarily provide information about their race violates the Constitution. See Pls.' S.J. Br. 6 n.6; Pls.' Consolidation Br. 6 n.8. But plaintiffs cannot do in their summary judgment briefing what they failed to do in their complaint. In any event, plaintiffs' belated argument fails on its merits.

### A.   The complaint does not properly plead a mere-inquiry theory

As explained above, the complaint plaintiffs filed is squarely—and exclusively—focused on a mandatory-condition theory. See note 3 and accompanying text, *supra*. Indeed, in the complaint's own words, "[t]his lawsuit challenges *solely* the government's right to *require* people to place themselves into tainted and useless racial boxes as a condition of getting married." Complaint 2 n.1 (emphases added). The constitutional violations asserted in the

complaint are likewise all predicated on the defendants "compel[ing]" plaintiffs to disclose their race as a condition of getting married. Complaint ¶¶ 74–77.[9]

In their most recent briefs supporting their requests for consolidation and summary judgment, plaintiffs specifically distinguish between a compulsory-disclosure obligation (the target of a mandatory-condition theory) and a voluntary request for information (which is also covered by a mere-inquiry theory). See Pls.' S.J. Br. 5–6 & n.6; Pls.' Consolidation Br. 6 & n.8. But "[a] plaintiff may not amend her complaint through argument in a brief." *Barclay White Skanska, Inc. v. Battelle Mem. Inst.*, 262 Fed. Appx. 556, 563 (4th Cir. 2008). And even if plaintiffs could raise a new claim in their latest briefing, their brief assertion that any inquiry into race violates the Constitution—which is contained in a twice-duplicated, two-sentence footnote devoid of any citations, see Pls.' Consolidation Br. 6 n.8; Pls.' S.J. Br 6 n.6—is woefully insufficient to meet their burden. See *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument . . . by failing to develop [it]—even if [its] brief takes a passing shot at the issue.").[10]

---

[9] In one of its requests for relief, the complaint asks this Court to enter an order "[e]njoining defendants and all others acting in concert with them to prepare and henceforth make available marriage license applications without inquiry into race." Complaint at 30. But at no point does the complaint assert that simply asking a question about race violates the Constitution, and the first three types of requested relief—like the rest of the complaint— are specifically trained on the mandatory-condition theory. See, *e.g.*, *id.* (asking the Court to issue "a temporary restraining order or preliminary injunction prohibiting defendants from denying [two of the plaintiffs] a marriage license if they fail to label themselves by race").

[10] Plaintiffs spend the vast majority of their most recent filings challenging the Attorney General's authority to construe Section 32.1–267 and the merits of his construction. See Pls.' Consolidation Br. 3–5; Pls.' S.J. Br. 5 & n.5. Those claims are both wrong and irrelevant. Construing statutes to effectuate their enforcement in a constitutional manner is a quintessentially executive function. See, *e.g.*, *City of Richmond v. Drewry-Hughes Co.*, 94 S.E. 989, 992 (Va. 1918) (noting that "the executive department of the state . . . is specially charged with the duty of construing and effectuating [statutory] provisions"). What is more, plaintiffs' bald assertions that the statute "at issue is simple and clear" and "plainly . . . requires the collection of racial labels," Pls. Consolidation Br. 3–4, both misreads the text of Section 32.1–

**B.     Plaintiffs' mere-inquiry theory fails as a matter of law**

The Supreme Court has emphasized that not "every state regulation which relates in any way to the incidents of or prerequisites for marriage must be subjected to rigorous scrutiny. To the contrary, reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed." *Zablocki v. Redhail*, 434 U.S. 374, 386 (1978). Unlike their mandatory-condition theory, plaintiffs do not even attempt to argue that simply asking applicants for a marriage license to voluntarily provide information about their race rises to the level of "significant[] interfer[ence] with decisions to enter into the marital relationship." *Id.* Indeed, other than glibly suggesting that having all applicants complete the *exact same form* is somehow analogous to the deplorable practice of "separate-but-equal" treatment, see Pls.' Consolidation Br. 6 n.8; Pls.' S.J. Br. 6 n.6, plaintiffs offer no argument whatsoever on this point. Beyond its procedural defects, plaintiffs' belated mere-inquiry theory thus also fails as a matter of law.

---

267 for the reasons the Attorney General's memorandum explains and ignores the principles of constitutional avoidance that guided the Attorney General's interpretation.

At any rate, this Court need not decide whether the Attorney General has the better statutory construction to dismiss plaintiffs' complaint for lack of jurisdiction because, right or wrong, the current marriage form reflects that construction and the defendant clerks have stated their intent to use that form going forward. In contrast, this Court could not grant plaintiffs' request to declare the statute unconstitutional without addressing the threshold statutory construction question because "there can be little doubt that" in "determin[ing] whether a statute is constitutional" the court must first determine "what the statute says." *Rumsfeld v. Forum for Academic and Institutional Rights*, 547 U.S. 47, 56 (2006). And, in conducting any such inquiry, the same principles of constitutional avoidance that guided the Attorney General's interpretation would also guide this Court. See *Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018) ("Under the constitutional-avoidance canon, when statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems.").

**CONCLUSION**

The complaint should be dismissed in its entirety.[11]

Respectfully submitted,

By: ___/s/_____

Toby J. Heytens
Solicitor General
Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-7240 – Telephone
(804) 371-0200 – Facsimile
solicitorgeneral@oag.state.va.us
*Attorney for Defendant Virginia State Registrar*

Richard C. Sullivan, Jr., VSB No. 27907
Bean, Kinney & Korman, P.C.
2311 Wilson Boulevard, Suite 500
Arlington, Virginia 22201
Telephone: (703) 525 – 4000
Facsimile: (703) 525 – 2207
rsullivan@beankinney.com
*Attorney for Defendants Clerks*

Christopher Falcon
1425 N. Courthouse Road, Suite 6700
Arlington, VA 22201
(703) 228-7010 – Telephone
(703) 228-7079 – Facsimile
cfalcon@arlingtonva.us
*Attorney for Defendant Clerk, Arlington Circuit Court*

---

[11] Consistent with that outcome, this Court should also deny plaintiffs' request for summary judgment for a temporary restraining order or preliminary injunction.

**CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2019, a true and accurate copy of this paper was

filed electronically with the Court's CM/ECF system, which will then send a notification of such

filing to the counsel of record in this case

By:  /s/
     Toby J. Heytens

18

# STATUTORY ADDENDUM

**Virginia Code Ann. § 32.1-267. Records of marriages; duties of officer issuing marriage license and person officiating at ceremony; blocking of social security number.**

A.    For each marriage performed in the Commonwealth, a record showing personal data, including but not limited to age and race of the married parties, the marriage license, and the certifying statement of the facts of marriage shall be filed with the State Registrar as provided in this section.

B.    The officer issuing a marriage license shall prepare the record based on the information obtained under oath or by affidavit from the parties to be married. The parties shall also include their social security numbers or other control numbers issued by the Department of Motor Vehicles pursuant to § 46.2-342 and affix their signatures to the application for such license.

C.    Every person who officiates at a marriage ceremony shall certify to the facts of marriage and file the record in duplicate with the officer who issued the marriage license within five days after the ceremony. In the event such officiant dies or becomes incapacitated before completing the certificate of marriage, the official who issued the marriage license shall complete the certificate of marriage upon the order of the court to which is submitted proof that the marriage was performed.

D.    Every officer issuing marriage licenses shall on or before the tenth day of each calendar month forward to the State Registrar a record of each marriage filed with him during the preceding calendar month.

E.    The State Registrar shall furnish forms for the marriage license, marriage certificate, and application for marriage license used in the Commonwealth. Such forms shall be configured so as to cause the social security number or control number required pursuant to the provisions of subsection B to appear only on the application for marriage license retained by the officer issuing the marriage license and the copy of such license forwarded to the State Registrar pursuant to the provisions of subsection D.

F.    Applications for marriage licenses filed on and after July 1, 1997, and marriage registers recording such applications, which have not been configured to prevent disclosure of the social security number or control number required pursuant to the provisions of subsection B of this section shall not be available for general public inspection in the offices of clerks of the circuit courts. The clerk shall make such applications and registers available for inspection only (i) upon the order of the circuit court within which such application was made or register is maintained, (ii) pursuant to a lawful subpoena duces tecum issued to the clerk, (iii) upon the written authorization of either of the applicants, or (iv) upon the request of a law-enforcement officer or duly authorized representative of the Division of Child Support Enforcement in the course of performing his official duties. Nothing in this subsection shall be construed to restrict public access to marriage licenses or to prohibit the clerk from making available to the public applications for marriage licenses and marriage registers stored in any electronic medium or other format that permits the blocking of the field containing the social security or control number required pursuant to the provisions of subsection B of this section, so long as access to such number is blocked.

A-1