

# COMMONWEALTH of VIRGINIA

Office of the Attorney General

Mark R. Herring
Attorney General

202 North Ninth Street
Richmond, Virginia 23219
804-786-2071
Fax 804-786-1991
Virginia Relay Services
800-828-1120
7-1-1

## MEMORANDUM

TO: Janet Rainey, Director and State Registrar, Division of Vital Records

FROM: Mark R. Herring, Attorney General

RE: Virginia Code Ann. § 32.1-267

---

Questions have arisen about whether Virginia law requires a clerk of the court to deny a marriage license when an applicant declines to provide information about his or her race.

For the reasons explained below, it is my conclusion that Code § 32.1-267 does not require a clerk to refuse to issue a marriage license when the applicant declines to identify his or her race,[1] and that clerks should issue a license regardless of an applicant's answer or non-answer to that inquiry.

Code § 32.1-267 sets forth several directives. The portion of the statute most relevant to the question at issue—Part A—is directed to no one in particular. That provision states that "[f]or each marriage performed in the Commonwealth, a record showing personal data, including but not limited to age and race of the married parties, the marriage license, and the certifying statement of the facts of marriage shall be filed with the State Registrar as provided in this section." Va. Code Ann. § 32.1-267(A) (2018).

The remainder of the statute assigns specific duties to: (1) the State Registrar; (2) marriage officiants; (3) the couple seeking a marriage license; and (4) officers issuing marriage licenses (including clerks). The statute directs the State Registrar to "furnish forms for the marriage license, marriage certificate, and application for marriage license used in the Commonwealth," which must be configured to protect the applicants' social security or control numbers from public disclosure. Va. Code Ann. § 32.1-267(E). As to officiants, the statute provides: "Every person who officiates at a marriage ceremony shall certify to the facts of marriage and file the record in duplicate with the officer who issued the marriage license within

---

[1] For the same reasons discussed below in connection with Code § 32.1-267, Virginia Administrative Code 12VAC5-550-130 "Marriage Return and Certificate Items" is likewise interpreted as permitting a couple to decline to provide an answer about race and permitting an officer issuing a marriage license to accept a marriage license from a couple who declines to answer a question about race.

1



five days after the ceremony." Va. Code Ann. § 32.1-267(C).[2] As to the couple seeking the marriage license, they must "include their social security numbers or other control numbers issued by the Department of Motor Vehicles pursuant to § 46.2-342 and affix their signatures to the application for such license." Va. Code Ann. § 32.1-267(B). Finally, the officer issuing the marriage license is directed to "prepare the record based on the information obtained under oath or by affidavit from the parties to be married" and "on or before the tenth day of each calendar month [to] forward to the State Registrar a record of each marriage filed with him during the preceding calendar month." Va. Code Ann. § 32.1-267(B),(D).

Several aspects of the statute bear emphasis. First, by directing that "a record showing personal data, including . . . race . . . *shall* be filed with the State Registrar," Va. Code Ann. § 32.1-267(A) (emphasis added), the statute plainly requires a question about race be asked. But no provision of the statute expressly requires the couple to identify their race or says what happens if they decline to do so. Indeed, the only part of the statute that directly imposes obligations on the couple—Part B—says nothing about race, and the provision directing the clerk to "prepare the record" makes clear that the record is based only on the information provided by the couple. The statutory text imposes no freestanding obligation on the clerk to ascertain the applicants' race, nor does it direct the clerk to require entry of race as a prerequisite to accepting the applicants' form. To the contrary, the statute is entirely silent as to how the clerk is to deal with an application that omits the requested information.

"In resolving this issue of statutory construction," I am guided by the principle that statutes should be construed "to avoid any conflict with the Constitution." *Commonwealth v. Doe*, 278 Va. 223, 229 (2009). When a statute is "susceptible of two different constructions"—one that "raises a constitutional question" and one that does not—"the interpretation that conforms to the Constitution" must prevail. *Id.* at 229–30; *see also L.F. v. Breit*, 285 Va. 163, 180 (2013) (courts do not accept an argument that would "render the . . . statute unconstitutional . . . . if there is any reasonable interpretation that conforms to the Constitution").

At a minimum, any statute requiring a governmental official to deny a marriage license to an applicant who declines to provide information about his or her race would raise serious constitutional questions. *See Doe*, 278 Va. at 229. That conclusion rises from two lines of authority that intersect here. First, the United States Supreme Court "has reiterated that the right to marry is fundamental under the Due Process Clause." *Obergefell v. Hodges*, 135 S. Ct. 2584, 2598 (2015); *accord Loving v. Virginia*, 388 U.S. 1, 12 (1967) ("The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men."). Given the centrality of marriage to "the concept of individual autonomy," *Obergefell*, 135 S. Ct. at 2599, the Constitution forbids "unjustified government interference

---

[2] The Virginia Supreme Court recently held that when an officiant violates Code § 32.1-267(C) by not filing the marriage certificate within five days of the marriage ceremony he or she officiated, "neither that statute nor any other statute mandates that the *officiant's* violation voids the *celebrants'* marriage . . . . The legal validity of their marriage cannot be so easily extinguished." *Levick v. MacDougall*, 294 Va. 283, 295 (2017).

[into] personal decisions relating to marriage," *Carey v. Population Servs., Intern.*, 431 U.S. 678, 685 (1977) (internal quotation mark omitted).

The second line of authority establishes that "[g]overnment action dividing us by race is inherently suspect." *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U.S. 701, 746 (2007). Indeed, "one of the principal reasons race is treated as a forbidden classification is that it demeans the dignity and worth of a person to be judged by ancestry instead of by his or her own merit and essential qualities." *Id.* (citation and quotation marks omitted).

At their intersection, these lines of authority dictate that government efforts to regulate "personal decisions relating to marriage," *Carey*, 431 U.S. at 685, through tools raising the specter of racial classification are, at best, constitutionally suspect. Because Code § 32.1-267 would do exactly that if understood as imposing a mandatory requirement that applicants for marriage licenses self-identify their race, it is appropriate to reject that interpretation in favor of an alternative that avoids constitutional infirmity. As described above, there is an available interpretation of Code § 32.1-267 that would permit a clerk to accept a marriage license even though one or both of the applicants declines to identify his or her race, and I have accordingly adopted that interpretation.

In sum, I do not read Code § 32.1-267 as requiring marriage applicants to provide the requested information regarding race or for clerks to refuse to accept applications that omit it. Therefore, a couple may decline to provide an answer about race, and an officer issuing a marriage license may accept a marriage license from a couple who declines to answer a question about race.

*Mark R. Herring*